**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JONI M. MARCUM,            Case No. 1:11-cv-810

    Plaintiff,                 Barrett, J.
                                    Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Joni M. Marcum filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

In February 2009, Plaintiff filed an application for disability Medicare coverage, alleging disability beginning in May 2002 due to both mental and physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). In December 2010, an evidentiary hearing was held before ALJ Chris McNeil, at which Plaintiff was represented by counsel. (Tr. 32-66). At the hearing, the ALJ heard testimony from

Plaintiff and from a vocational expert. On January 26, 2011, the ALJ denied Plaintiff's application in a written decision. (Tr. 7-26).

The record on which the ALJ's decision was based reflects that Plaintiff's last insured date was December 31, 2006, at which time she was 49 years old. Plaintiff graduated from high school and attended cosmetology school. (Tr. 154). Plaintiff has experienced mental health symptoms intermittently at least since 1982, when she was first diagnosed with panic attacks following the birth of her twin daughters. (Tr. 722). In 1994, Plaintiff began seeking treatment for the physical problems on which her disability claim is based, (Tr. 37), which include fibromyalgia, lupus, and back pain. Plaintiff's employment history includes work as a seamstress, and full-time work as a library assistant until mid-2002. (Tr. 20).

Based upon the record presented, the ALJ found that Plaintiff had severe physical impairments relating to her fibromyalgia and lupus, but that her remaining alleged impairments, both physical and mental, were non-severe because they do not have "more than a minimal impact upon the claimant's ability to engage in basic work-related activities," and/or were not expected to last "12 months or longer during the period in question." (Tr. 15-16). The ALJ determined that at the time her insured status expired in December 2006, Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work, restricted by the following non-exertional limitations:

> She was able to occasionally lift 20 pounds and frequently lift 10 pounds; push or pull 10 pounds using hand or foot controls; stand or walk at least 2 hours and sit about 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; no more than occasionally climb ramps or stairs; and no more than occasionally stoop, kneel, crouch, or crawl.

2

(Tr. 19).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a seamstress at a sewing store. (Tr. 24). In the alternative, the ALJ determined that there were "other jobs that exist in significant numbers in the national economy" that Plaintiff could have performed at the time that her insured status expired. (Tr. 25). Therefore, the ALJ determined that Plaintiff was not under a disability prior to December 2006, and was not entitled to disability Medicare coverage. (Tr. 26).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). To qualify for benefits, the claimant must establish that she became disabled prior to the date she was last insured. *See* 20 C.F.R. §404.131.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Regardless of the type of social security benefits sought by the claimant, the Social Security Agency is guided by the following sequential benefits analysis in review of a new application: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Error

As her sole statement of error,[1] Plaintiff contends that the ALJ erred by failing to consider the mental limitations provided in the opinions of Plaintiff's long-term therapist, and by instead concluding that Plaintiff does not suffer from any severe mental impairment, including but not limited to a Listed impairment. This single claim of error impacts nearly all steps of the sequential analysis, including Steps 2 through 5.

### 1. Alleged Error at Steps 2 and 3

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. §423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). Despite evidence that Plaintiff has sought mental health treatment at various times over many years, the ALJ concluded that Plaintiff did not have any "severe" mental health impairments during the relevant period of time, based upon a lack of evidence "from any medical source that such impairments had more than a minimal impact upon the claimant's ability to engage in basic work-related activities, or lasted 12 months or longer during the period in question." (Tr. 16). The ALJ elaborated:

> As for the claimant's mental condition, the record lacks sufficient objective evidence to establish an impairment that lasted for 12 continuous months during the relevant period of May 23, 2002 to December 31, 2006. The

---

[1] Because Plaintiff does not challenge the ALJ's determination of her physical impairments, this Court will limit its discussion to Plaintiff's alleged mental impairments.

5

> undersigned acknowledges that at times, the claimant displayed some serious mental symptomatology, but these symptoms did not appear to last for a continuous 12 months. Moreover, the record contains several significant gaps in the claimant's mental health treatment, which further supports significant periods when the claimant's mental impairments did not cause more than a minimal impact on the claimant's ability to perform work-related activities. Additionally, the record reveals that the claimant['s] allegedly disabling depression and anxiety were present at approximately the same level of severity prior to her alleged onset date of disability when she was still working, which strongly suggests that this condition would not prevent her from working during the relevant period in question. Further, in April 2005, during a deposition, the claimant acknowledged that her mental condition did not prevent her from working....

(Tr. 17). The ALJ reasoned that most of the records pertaining to Plaintiff's mental health treatment documented her condition either "before or after the relevant period at issue." (Tr. 22).

Focusing on the time period of May 2002 through December 2006, the ALJ concluded that the evidence did not support a "severe" mental impairment. Reviewing the "Paragraph B" criteria used to evaluate mental health limitations,[2] the ALJ found that Plaintiff's mental impairments "were associated with no more than mild restriction of daily living, no more than mild limitation of social functioning, no more than mild restriction of concentration, persistence or pace and no episodes of decompensation." (Tr. 18).

Plaintiff presents no specific challenge to any of the ALJ's findings; she does not argue, for example, that she has a "moderate" or "severe" limitation in any particular area of the relevant criteria. Instead, Plaintiff argues generally that the ALJ's error in

---

[2]When a claimant claims disability from a mental impairment, an ALJ must rate the degree of functional limitation resulting from that impairment with respect to "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§404.1520a(b)(2), (c)(3). These four areas are commonly referred to as the "B criteria." *See Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009)(citing 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 et seq.).

6

failing to find her mental impairment "severe" at Step 2 requires remand.  However, an error at Step 2 generally will not provide grounds for remand, so long as the ALJ found at least one other severe impairment and proceeded through the sequential analysis on that basis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  In this case, the ALJ did proceed through the sequential analysis on the basis of Plaintiff's physical impairments, and further stated that he was considering Plaintiff's alleged mental limitations in determining her RFC.

Plaintiff's argument implicitly suggests that the alleged Step 2 error in this case so pervaded the entire sequential analysis that remand is required.  Plaintiff contends, for example, that the ALJ failed to properly analyze, at Step 3, whether Plaintiff met or equaled a listed mental health impairment.  But Plaintiff's devotion of only a partial sentence to this argument (see Doc. 6 at 2), requires this Court to reject it as overly conclusory and without merit.  *See McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011)(arguments not raised and supported in more than a perfunctory manner may be deemed waived).  In any event, the ALJ determined that Plaintiff did not meet or equal any listed impairment, noting accurately that "no treating or examining physician has cited findings equivalent in severity to the criteria of any listed impairment, nor does the evidence otherwise establish medical equivalency."  (Tr. 19).

**2.  Alleged Error at Steps 4 and 5**

Plaintiff spends more time arguing that substantial evidence does not support the ALJ's failure to find *any* mental limitations at all in the context of Steps 4 and 5 of the sequential analysis.  The Commissioner urges this Court to reject Plaintiff"s argument because she fails to articulate any specific limitations caused by her mental impairment.

7

However, Plaintiff does claim -albeit briefly- that the ALJ should have adopted the work-related limitations offered by her long-standing therapist, Ms. Callan.  Before turning to Ms. Callan's opinions, it is helpful to review all other evidence concerning Plaintiff's alleged mental health limitations.  Only by reviewing the record as a whole can this Court determine whether substantial evidence supports the ALJ's conclusion that Plaintiff suffered from no mental health limitations during the relevant time period.

**Evidence of Mental Impairment from May 2002 through December 2006**

Plaintiff's employment as a library assistant ended in August 2002, following a period of claimed medical leave.  Following the termination of her employment, Plaintiff sued her employer for discrimination, alleging in part that she had been verbally harassed by a co-worker.  That litigation encompassed several years, and eventually resulted in a monetary settlement.  Because the litigation was ongoing during a good portion of the time that Plaintiff alleges disability, a number of the relevant records in this case were generated in the context of Plaintiff's prior lawsuit.

For example, in June of 2002, Plaintiff's physician, a rheumatologist, completed a short-term disability form in connection with Plaintiff's application for short-term disability from her library job.  The form reflects that Plaintiff was at that time, "fearful, depressed, overwhelmed, by hostile environment at work," and states that Plaintiff is "unable to work at this time," although the doctor estimated that Plaintiff would recover by August 31, 2002. (Tr. 557).  The form reflects a global assessment of functioning ("GAF") score of 50 at the time, but also noted that Plaintiff's GAF score previously had been 75, a level consistent with no more than slight mental impairment.  (*Id.*).

Plaintiff claims that instead of recovering, she remained severely and continuously disabled from May 2002 through December 2006.  By contrast, the ALJ found that although Plaintiff experienced "some serious mental symptomatology" during shorter periods of time, she never experienced severe symptoms that lasted "for a continuous 12 months," as evidenced in part by "several significant gaps in the claimant's mental health treatment."  (Tr. 17).  The ALJ noted that after seeing a psychiatrist and receiving medication, Plaintiff reported feeling much better in October 2002, just five months after her claimed disability onset date. (Tr. 417).  She provided a similar report of improvement in March 2003. (Tr. 422).

The ALJ also pointed out that Plaintiff's work-stress related pyschotherapy treatment "ended shortly after her alleged onset of disability."  (Tr. 20).  Plaintiff admits she discontinued psychotherapy in 2004, but argues that the record reflects that "she couldn't afford it." (Doc. 6 at 3, citing Exhibit 2F at 93).  However, the record cited by Plaintiff does not contain the alleged testimony.  Moreover, in April 2004, Plaintiff's psychotherapist at the time, Ms. Polanka, opined that Plaintiff had a "history of anxiety and depression dating to the birth of her twin daughters," but that Plaintiff "had been treated <u>successfully</u> with a combination of psychotherapy and medication."  (Tr. 315, emphasis added).  Ms. Polanka also commented that Plaintiff had not required treatment from January 2000 to March 26, 2002, when she returned to therapy with significant emotional symptoms "for several months." (*Id.*).  Similarly, in March 2009, Ms. Polanka reported that notwithstanding Plaintiff's history of "chronic episodes" of depression and anxiety, Plaintiff "responds to supportive psychotherapy."  (Tr. 717-718).  In short, the records of Ms. Polanka support the ALJ's conclusion that Plaintiff's mental

health symptoms were episodic in nature, and not of sufficient severity or duration to qualify as a "severe" impairment.  In this respect, the ALJ viewed Plaintiff's mental health condition as similar to any other chronic health condition, such as asthma or diabetes, which may or may not be "severe," depending on how well the condition is controlled, and the level and duration of serious symptoms.

After discontinuing psychotherapy in 2004, the ALJ noted that it was not until 2006 that Plaintiff reported a worsening of her mental health symptoms.  Plaintiff contends that the ALJ ignored evidence that she continued her psychiatric medications, but that does not mean that Plaintiff suffered "more than minimal" limitations during that period.  In fact, Plaintiff testified at the evidentiary hearing that effective medications had nearly eliminated her panic attacks.  (Tr. 43).

In March 2006, Plaintiff began counseling therapy with a new therapist, Susan Callan, MSW, LISW.  Initially, Plaintiff reported severe symptoms, but she also reported several situational stressors, including the death of a family member.  (Tr. 979, 989). Within a month of beginning psychotherapy treatment, Plaintiff again began reporting improvement.  (Tr. 22; Tr. 985).  By September and October 2006, Plaintiff was reporting that she was exercising three times per week, with improved mood (Tr. 999. At an office visit on January 25, 2007, approximately a month after the date Plaintiff was last insured, Plaintiff reported her mood as "good for past 2 wks," and Ms. Callan's notes reflect that Plaintiff was seeing friends, was "less stressed," and had a "stable & improved" mood.  (Tr. 1005).  Thus, despite the existence of some notes that reflect continuing symptoms, substantial evidence supports the ALJ's conclusion that Plaintiff's episodic serious symptoms were not of a sustained nature, but instead improved from

October through December 2006 within a few months of resuming psychotherapy treatment. (Tr. 17).

Aside from the records and opinions of her two therapists, Plaintiff offered no opinion evidence from any treating psychologist or psychiatrist, or any other "acceptable medical source," concerning her mental limitations.[3] Therefore, the ALJ relied in part upon the May 2009 opinions of a state agency consulting psychologist, Alice Chambly, Psy.D. (Tr. 724-737). Although the consultant did not examine the Plaintiff, she reviewed Plaintiff's medical records and concluded that, despite evidence of "a history of depression, anxiety and panic disorder noted throughout her records beginning in 1994 to the present," "[a]ll records ..are…prior to her DLI [date last insured]." Based on the lack of records dating to the relevant period, Dr. Chambly concluded that: "the evidence is insufficient to assess her conditions prior to her DLI." (Tr. 736). Another consulting reviewer agreed, noting that although Plaintiff alleged a worsening of her mental condition beginning in April 2009, that date was long after Plaintiff's last insured date. (Tr. 23). The ALJ properly acknowledged that the consultants did not have access to the additional documentary and testimonial evidence presented at the evidentiary hearing. Even so, the ALJ found no more than mild mental restrictions, leading to a conclusion that Plaintiff's mental impairment was "nonsevere." (Tr. 18, 23).

In addition to the medical evidence, the ALJ relied heavily upon Plaintiff's deposition testimony from her employment discrimination suit, dated April 21, 2005, in the midst of her claimed disability period. During her deposition, Plaintiff testified she

---

[3] Only a psychologist or physician is deemed to be an acceptable medical source under the regulatory scheme. *See* 20 C.F.R. §416.913(a); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006).

could not work mainly due to her physical ailments.[4] Although she also testified that she could not work due to her "fear of confrontation" with co-workers, she subsequently admitted that she was mentally capable of working. (Tr. 329-331). Plaintiff argues that the ALJ mischaracterized her testimony, but upon review, I find the ALJ's interpretation to be a reasonable one. Plaintiff testified that she continued to visit friends at the library, and to check out and return items there. (Tr. 375). Plaintiff testified that, in January 2004, she applied for several other positions of employment. (Tr. 331-332). Finally, as part of a proposed settlement in May of 2005, Plaintiff requested reinstatement, or alternatively, a "positive letter of reference." (Tr. 398).

Last, the ALJ relied upon Plaintiff's reported daily activities, which included "performing some household chores and participating in some social activities, such as eating out on Saturday night with friends." (Tr. 20). Plaintiff testified that she used to be able to sweep/mop and wash dishes in addition to volunteer activities– all of which she testified she could do during the relevant insured period. (Tr. 20). From May of 2002 through December 2006, Plaintiff testified that she volunteered as a deacon at her church, including service as church secretary and treasurer. She testified that she also chaired a church committee in 2005. (Tr. 333). Her church duties involved regular interaction with others, such as visiting people too ill to attend church. (*Id.*).

The ALJ cited this deposition testimony as supporting a level of mental functioning that was inconsistent with a finding of disability prior to the expiration of Plaintiff's insured status. (Tr. 18). Although Plaintiff's volunteer duties were not

---

[4] Plaintiff contends it was error for the ALJ to rely so heavily on her deposition without noting that Plaintiff required three unscheduled breaks. However, the record does not clearly reflect whether the breaks were for physical or mental reasons. Even if the latter, given the emotional context of a discrimination lawsuit, evidence that a plaintiff required some breaks is hardly probative of the issue of disability.

12

substantial gainful activity, the ALJ found that "the performance of these services…contradicts the claimant's testimony regarding the severity of limitations resulting from her impairments." (Tr. 15). Plaintiff complains that her church duties required just one or two hours per week of her time. (*See* Tr. 333). But it was not improper for the ALJ to cite Plaintiff's church duties as one piece of the "substantial" evidentiary picture that he relied upon.

**2010 Assessments of Plaintiff's Work Limitations**

As stated, Plaintiff objects primarily to the failure of the ALJ to adopt Ms. Callan's assessment of Plaintiff's limitations, provided on November 19, 2010 – nearly four years after Plaintiff's last insured date. Plaintiff also cites Ms. Polanka's 2010 opinions in support of her claim. In her 2010 assessment, Ms. Callan opined that Plaintiff's "excessive worry, fear of failure, constant anxiety, and lack of mental and emotional stamina would significantly interfere with her ability to function in a work environment." (Tr. 23, citing Tr. 969-75). In assessing specific work abilities, Ms. Callan marked that Plaintiff would have poor or no abilities in half of the listed areas. (Tr. 973-974).

As psychotherapists, neither Ms. Callan nor Ms. Polanka are "treating physicians" whose opinion is entitled to controlling weight under the regulatory scheme, nor are they acceptable medical sources. Nevertheless, an ALJ is required to evaluate the opinions of non-medical "other sources" in the same way that an ALJ must evaluate all other evidence. *See generally* SSR 06-03p, 2006 WL 2329939 at *3 (explaining that opinions from therapists "should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.").

The ALJ rejected Ms. Callan's November 2010 assessment in part because "Ms. Callan only began counseling the claimant in March 2006 and her opinion has not been specified to the time between that date and the claimant's date last insured." (Tr. 23). However, Plaintiff asserts that Ms. Callan "states conclusively that her findings, limitations and restrictions began and have remained the same since March 14, 2006." (Doc. 6 at 6).  Not surprisingly, given that such a statement would be inconsistent with other opinions expressed by Ms. Callan as well as with her own treatment records, Plaintiff fails to cite to any page in the administrative record in which Ms. Callan makes such an unquivocal statement.  In her reply memorandum, Plaintiff cites the "statement" as appearing within "Tr. 978-1071," a reference to the entirety of Ms. Callan's therapy notes over a four-year time period.  This Court has no obligation to review nearly 100 pages of hand-written notes to find the reference.  Nevertheless, the Court has attempted to review the entirety of the sometimes illegible notes, but has been unable to locate the alleged quotation.

In addition to pointing out that Ms. Callan's 2010 opinion did not relate back to the relevant time period, the ALJ cited records showing "that during significant portions of the relevant period the claimant reported a relatively good mental status…that does not correspond to Ms. Callan's assessment." (Tr. 23).  Last, the ALJ noted correctly that Ms. Callan is "not an acceptable medical source." (*Id.*).  In addition to the fact that the vast majority of Ms. Callan's records post-date Plaintiff's insured status, the ALJ found that "Ms. Callan's treatment records from the relevant period reflect only early treatment, including several sessions showing increased physical functional capacity and less depression." (Tr. 22).  In other words, during the relevant period prior to

14

December 2006, the ALJ cited specific evidence that Plaintiff's mental condition had actually improved, notwithstanding an apparent downturn in Plaintiff's mental status several years <u>after</u> her insured status expired.

Substantial evidence supports the ALJ's conclusions. Prior to offering her more extreme opinions in November 2010, back in April 2009, Ms. Callan offered a less dire opinion. Like Plaintiff's prior therapist, Ms. Polanka, Ms. Callan reported that she had treated Plaintiff for several years for panic disorder, but that Plaintiff had "responded <u>well</u> to treatment." (Tr. 723, emphasis added). In 2009, she reported that Plaintiff is "often" "sad, anxious & worried," but she denied <u>any limitations</u> at all in Plaintiff's "concentration/persistence/pace, memory, confusion, frustration tolerance, etc." (Tr. 721).[5] Ms. Callan did allow that Plaintiff's symptoms increase with "major life changes," (Tr. 721), and that Plaintiff's stress tolerance is "difficult," (Tr. 722), but that does not mean she was precluded from all work prior to December 2006. Overall, Ms. Callan's 2009 opinions were consistent with the ALJ's determination that Plaintiff suffered severe symptoms only for short episodic time periods, while maintaining a mental status that did not significantly interfere with her ability to work throughout most of the time period in issue.

Interestingly, Ms. Polanka's 2009 opinions are also somewhat less supportive of Plaintiff's disability claim than are her later opinions. In 2009, Ms. Polanka reported that Plaintiff generally has a "very low stress tolerance," and exhibits "tearfulness" and

---

[5]In the year prior to her 2009 report, Ms. Callan assessed Plaintiff's GAF score as ranging from 45 to 55. While the Social Security Administration has declined to endorse the use of GAF scores for purposes of determining disability, *see DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411 (6th Cir.2006)(additional citations omitted), scores in the 50's generally are not inconsistent with the ability to perform unskilled work. *See Edwards v. Barnhart*, 383 F. Supp.2d 920, 928 (E.D. Mich. 2005); *see also* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 34 (2000).

15

"withdrawal from social interactions." (Tr. 717-18). Offering an additional opinion in November 2010, Polanka reiterated more strongly that Plaintiff "seemed to function best when the stress was kept to a minimum." (Tr. 977). In 2010, Ms. Polanka offered that, at her last clinical visit six years previously, Plaintiff had presented as "a significantly anxious person who would become non functional under stress." (*Id.*). Leaving aside the viability of an opinion predicting that a claimant's anxiety disorder will forever render her "non functional" some six years after her last therapy session, the ALJ properly discounted the 2010 opinion based upon his finding that the "treatment records do not support Ms. Polanka's assessment," and "the majority of her assessment was based on treatment predating the claimant's alleged onset date of disability."

Turning to the ALJ's legal analysis, Plaintiff asserts that the ALJ improperly suggested that Plaintiff's *treatment* was required to have lasted for more than 12 consecutive months prior to the date she was last insured, rather than merely her symptoms. Plaintiff contends that even if just her most recent course of treatment with Ms. Callan is considered, the ALJ should have determined that her mental impairment actually lasted well beyond 12 months. Despite some ambiguity in the wording of the ALJ's opinion, I find that the record as a whole – including the ALJ's reference to periods of improvement from September through December 2006 – contains substantial evidence that the ALJ properly evaluated whether the Plaintiff's "severe" limitations lasted (or were expected to last) for 12 months, prior to the expiration of her insurance.

In sum, I find no fault in the ALJ's legal or factual analysis. The ALJ specifically acknowledged that Steps 4 and 5 of the sequential analysis require "a more detailed assessment by itemizing various functions contained in the broad categories found in

paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments," and stated that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." (Tr. 19). Error is not demonstrated merely by the fact that the ALJ found no mental limitations, because it is clear that he applied the correct legal framework and that substantial evidence exists to uphold his decision.

### III. Conclusion and Recommendation

For the reasons discussed above, I conclude that the ALJ committed no reversible error. Therefore, **IT IS RECOMMENDED THAT** the Commissioner's decision to deny Plaintiff benefits be **AFFIRMED**, and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JONI M. MARCUM, | Case No. 1:11-cv-810 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).