UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONI M. MARCUM,                                    CASE NO.: 1:11-CV-810

    Plaintiff,                                    Barrett, J.
                                                   Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on the Magistrate Judge's November 5, 2012 Report and Recommendation ("Report") in which it is recommended that the Commissioner's decision to deny Plaintiff benefits be affirmed. (Doc. 9, p. 17).

The parties were given proper notice under Rule 72(b) of the Federal Rules of Civil Procedure, including notice that the parties would waive further appeal if they failed to file objections to the Report in a timely manner. (Doc. 9, p. 18); *see United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Plaintiff has filed timely objections to the Report. (Doc. 11). This matter is now ripe for review.

**I.**  **BACKGROUND**

As the Magistrate Judge has completed a comprehensive review of the record, the same will not be repeated here. Instead, the relevant facts will be discussed herein when necessary and appropriate.

**II.**  **STANDARD OF REVIEW**

1

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

### III. ANALYSIS

Plaintiff raises two specific objections to the Report. Each objection is addressed separately below.

#### A. First Objection

In the Report, the Magistrate Judge addressed Plaintiff's objection of alleged error at Steps 2 and 3 of the sequential analysis. (Doc. 9, pp. 5-7). After reviewing the ALJ's conclusion in light of the record evidence, the Magistrate Judge rejected Plaintiff's argument that any error committed at Step 2 in failing to find Plaintiff's mental impairment "severe" justified remand, reasoning that the ALJ found at least one other severe impairment (i.e., certain physical impairments), proceeded through the sequential analysis on that basis, and "further stated that he was considering Plaintiff's alleged mental limitations in determining her RFC." (Doc. 9, p. 7) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). The Magistrate Judge also rejected Plaintiff's argument as to the ALJ's error at Step 3 as conclusory

and without merit, and further noted that the ALJ stated "accurately that 'no treating or examining physician has cited findings equivalent in severity to the criteria of any listed impairment, nor does the evidence otherwise establish medical equivalency." (Doc. 9, p. 7).

Plaintiff objects only to the first part of the Magistrate Judge's conclusion in that regard, contending that the Magistrate Judge erred in finding that any error committed at Step 2 was harmless. (Doc. 11, p. 2). Specifically, she states:

> However, an error at Step 2 of the evaluation is only harmless if the ALJ ultimately addresses all the claimant's impairments in determining the residual functional capacity. In the decision, while Judge McNeil does discuss the mental health issues, he does not provide *any* mental limitations in the adopted residual functional capacity. Therefore, it is certainly clear that he did not consider the alleged mental impairment and its impact upon the claimant's ability to perform work related activity. (*See Swartz v. Barnhart*, 188 Fed. Appx. 361, 368 (6t[h] Cir. 2006).

(Doc. 11, p. 2).

An ALJ's failure to adopt any mental limitations in the RFC does not mean the ALJ failed to address the claimant's impairment in determining the RFC.[1] Indeed, as Plaintiff concedes (Doc. 11, p. 2) and as the Magistrate Judge recognizes in the Report (Doc. 9, pp. 9-17), the ALJ *did* address her mental status in determining her RFC, but chose not to include any mental limitations in the RFC. Moreover, the ALJ specifically acknowledged that Steps 4 and 5 of the sequential analysis require "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments[,]" and stated that "the following residual functional capacity assessment

---

[1] The Magistrate Judge also recognized that: "Error is not demonstrated merely by the fact that the ALJ found no mental limitations, because it is clear he applied the correct legal framework and that substantial evidence exists to uphold his decision." (Doc. 9, p. 17).

3

reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 19). Accordingly, the Court cannot agree with Plaintiff that it is "certainly clear" that the ALJ did not consider her alleged mental impairment and its impact upon her ability to perform work related activity. Whether substantial evidence supports the ALJ's RFC goes to the arguments addressed by the Magistrate Judge as to the alleged errors at Step 4 and 5, rather than as to the alleged error at Step 2. To the extent Plaintiff raises objections to the Report as to the alleged errors at Step 4 and 5, they are addressed below. However, for the foregoing reasons, the first objection is overruled.

      B.    **Second Objection**

In the Report, the Magistrate Judge also addressed the alleged errors at Steps 4 and 5 of the sequential analysis, concluding that substantial evidence supports the ALJ's conclusion that Plaintiff suffered no mental health limitations during the relevant time period. (Doc. 9, pp. 7-18). In reaching that conclusion, the Magistrate Judge considered record evidence of, and the ALJ's conclusions regarding, Plaintiff's mental status from December 2002 through December 2006, including but not limited to her counseling with therapist Susan Callan commencing in March 2006, and the 2010 assessments of Plaintiff's work limitations, including but not limited to Ms. Callan's November 19, 2010 assessment occuring nearly four years after Plaintiff's date last insured. (*Id.*)

As to those conclusions, Plaintiff "maintains that the residual functional capacity [as determined by the ALJ] should have adopted the mental limitations and restrictions spelled out by Susan Callan in an Assessment of Ability to do Work Related Activities

4

completed on November 19, 2010." (Doc. 11, p. 2).  She sets forth three specific objections as to this issue.  First, Plaintiff takes issue with the Magistrate Judge's finding that substantial evidence supports the ALJ's conclusion that Ms. Callan's November 2010 assessment was inconsistent with the record evidence that showed Plaintiff reporting a "relatively good mental status" during significant portions of the relevant period. (Doc. 9, p. 14; Doc. 11, p. 2).  Specifically, she takes issue with the reliance on the ALJ's citation to several of Ms. Callan's treatment records showing "increased physical functional capacity and less depression." (Doc. 11, p. 2).  She contends that Ms. Callan's treatment notes show "a natural wax[ing] and waning of her symptoms that is clear throughout the nearly *weekly* sessions with Ms. Callan since March 2006." (Doc. 11, p. 2) (emphasis in original).  However, these are several flaws in Plaintiff's argument.  As the Magistrate Judge noted, a vast majority of Ms. Callan's treatment records post-date her date last insured.  (Doc. 9, p. 14).  To the extent she intends to show a natural waxing and waning in those records beyond her date last insured, those records are of little relevance to this particular issue as the reference was in regard to the relevant timeframe through the date last insured.  As to the records during the relevant timeframe, neither the Magistrate Judge nor the ALJ denied that the records show changes in Plaintiff's mental conditions.  Both recognized that "significant" but not all portions of the records showed her reporting "relatively good mental conditions." (Doc. 9, p. 14) (citing Tr. 23).  The ALJ further acknowledged Plaintiff's mental conditions earlier in his decision, stating, for example, "[i]n July 2006, approximately six months before her date last insured, the claimant reported a worsening of depression, but by October 2006, she again reported improvement in her mental symptomatology

5

and this improvement continued into the December 2006 visit." (Tr. 17) (citing Tr444-46). As such, in pointing out the portions of Ms. Callan's treatment records showing "improvement," neither the Magistrate Judge nor the ALJ ignored her changing mental status. Instead, the issue raised relates to the consistency of Ms. Callan's November 2010 assessment with what her treatment notes and other record evidence showed Plaintiff to be reporting through the date last insured. The reference to Ms. Callan's treatment notes showing reports of "improvement" are just one example of record evidence cited that supported the ALJ's statement as to "relatively good mental conditions" during the relevant timeframe. As such, Plaintiff's argument as to "waxing and waning" does not undermine the Magistrate Judge's conclusion or demonstrate that the ALJ's decision to give less weight to Ms. Callan's November 2010 assessment was not supported by substantial evidence.

Second, Plaintiff states that "there is nothing in Ms. Callan's notes to suggest that the claimant had responded so positively to medications and/or therapy that she could decrease the frequency of treatment or sustain regular and continuing employment." (Doc. 11, p. 2). Given that this is the sole statement made by Plaintiff in regards to this issue, it is unclear as to Plaintiff's intent in raising it. The Court, however, infers that Plaintiff makes that statement to point out that Ms. Callan's treatment notes are consistent with her November 2010 assessment, and thus, are inconsistent with the ALJ's residual functional capacity determination. However, Ms. Callan's failure to render any ultimate conclusions in her treatment notes as to whether Plaintiff could decrease the frequency of treatment or sustain regular and continuing employment does not mean Plaintiff was unable to do so. The omission therefore lends neither

6

consistency to Ms. Callan's November 2010 assessment nor inconsistency to the ALJ's determination as to Plaintiff's residual functional capacity.  It is notable though that Ms. Callan's November 2010 assessment is inconsistent with her own earlier assessment in April 2009.  Unlike the November 2010 assessment, the April 2009 assessment indicates that Plaintiff had "responded well to treatment" and had no limitations at all in her "concentration/persistence/pace, memory, confusion, frustration tolerance, etc." even though she was "often" "sad, anxious & worried[.]"  (Tr. 721, 723).  However, as the Magistrate Judge recognized, those April 2009 opinions of Ms. Callan are consistent with the ALJ's determinations that Plaintiff suffered severe symptoms only for short episodic time periods, while maintaining a mental status that did not significantly interfere with her ability to work throughout most of the time period in issue.  Lastly, other record evidence, such as Plaintiff's ability to work as a church deacon during the relevant timeframe, her 2005 deposition testimony indicating her mental status did not prevent her from working and her psychotherapist Ms. Polanka's April 2004 and March 2009 opinions, further support the ALJ's determination.  (Tr. 315, 329-33, 717-18).

Third and finally, Plaintiff takes issues with the Magistrate Judge's finding that the ALJ was correct that there was "no specified time frame to Ms. Callan's assessment showing that her opinion would relate to the time prior to the claimant's date last insured."  (Doc. 11, pp. 2-3).  Plaintiff contends that contrary to the Magistrate Judge's findings, Ms. Callan "did specifically state that the mental health assessment and findings stated therein began with the onset of her treatment and have 'remained the same since 3/14/06.'"  (Doc. 11, p. 3).  In support, Plaintiff attached a letter written by Ms. Callan dated November 30, 2010, which she contends was submitted to the ALJ by

7

Plaintiff on the date of the hearing but which was erroneously excluded from the administrative record filed with the Court. (*Id.*)  Although the letter is not included as part of the administrative record, the Court does not find that its inclusion would alter the conclusion reached by the Magistrate Judge.  As the Magistrate Judge correctly acknowledged, Ms. Callan's statement is "inconsistent with other opinions expessed by Ms. Callan as well as with her own treatment records." (Doc. 9, p. 14).  Although Ms. Callan's letter indicates that Plaintiff's mental health assessment has "remained the same since 3/14/06," that statement is belied by her own earlier assessment.  In April 2009, she indicated Plaintiff "responded well to treatment[,]" and although she reported Plaintiff was "often" "sad, anxious & worried," she denied any limitations at all in Plaintiff's "concentration/persistence/pace, memory, confusion, frustration tolerance, etc." (Tr. 721, 723).  She also assessed Plaintiff's GAF score as ranging from 45 to 55. (Tr. 722).  In contrast, in November 2010, she indicated Plaintiff's mental abilities may significantly interfere with her ability to function in a work environment and assessed Plaintiff's GAF score as 45 with a code range of 41-50.  (Tr. 969).  Moreover, her treatment notes show changes in Plaintiff's mood during both the relevant timeframe and after her date last insured.  (Tr. 978-1071).  As such, the Court finds that the ALJ's statement that he could not "conclusively extrapolate that Ms. Callan's mental assessment refers only to the claimant's mental status prior to December 31, 2006, the claimant's date last insured" is supported by substantial evidence.  Further, the Court notes that both the Magistrate Judge and the ALJ correctly recognized that Ms. Callan is "not an acceptable medical source" when making their determinations.  (Doc. 9, p. 14) (citing Tr. 23).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Objections (Doc. 11) are **OVERRULED**, and the Report (Doc. 9) is **ADOPTED** in its entirety.  Accordingly, the Commissioner's decision to deny Plaintiff benefits is **AFFIRMED** and this case shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court
